UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JIMMY GONG
and JIMMY'S SPORTSHOP INC.,

       Plaintiffs,

  -against-

LIEUTENANT MARC TIMPANO, individually,
SERGEANT WILLIAM RUSSELL, individually,
and THE COUNTY OF NASSAU,

       Defendants.
-----------------------------------------------------------X

Case No.: 23-cv-05401

**COMPLAINT**

**JURY TRIAL DEMANDED**

  Plaintiffs, JIMMY GONG and JIMMY'S SPORTSHOP INC, by their attorneys, HARFENIST KRAUT & PERLSTEIN, LLP, as and for a complaint, allege as follows:

### NATURE OF THE ACTION

1. This is an action seeking monetary damages related to the deprivation of Plaintiffs Jimmy Gong and Jimmy's Sportshop Inc's civil rights guaranteed to under the Fourth and Fourteenth Amendments to the United States Constitution committed by the above named defendants.

2. The Plaintiffs base this action upon the abject failure of the County of Nassau to provide prompt and meaningful post deprivation process as required under the Fourteenth Amendment, the Second Circuit Court of Appeals and multiple District Court decisions.

## JURISDICTION

3. Jurisdiction is proper in this Court pursuant to 28 USC §1331, 28 USC §1367(a) and 42 USC §1983 in that the actions taken by the municipal defendants violated the Plaintiff's civil rights and the because the Federal and state law claims derive from a common nucleus of operative facts.

## VENUE

4. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events occurred in Nassau County which is located in the Eastern District of New York.

## PARTIES

5. Plaintiff, Jimmy Gong ("Jimmy") is a resident of the State of New York and lives in Nassau County.

6. Jimmy is the owner of Jimmy's Sportshop Inc. ("JSI") which maintains a storefront in Mineola.

7. Lieutenant Marc Timpano ("Timpano") who is being sued in his individual capacity, is the supervisor of the Nassau County Police Department's Pistol License Section ("NCPD PLS"). Upon information and belief, at all relevant times described herein, Timpano was acting under color of state law within the scope of his employment with the Nassau County Police Department.

8. Sergeant William Russell ("Russell") who is being sued in his individual capacity, is a Nassau County Police Department Sergeant who is assigned to the NCPD PLS. Upon information and belief, at all relevant times described herein, Russell was acting under color of state law within the scope of his employment with the Nassau County Police Department.

9. The County of Nassau ("Nassau") is a municipal subdivision of the State of New York, duly existing by reason of and pursuant to the laws of the State of New York.

## STATEMENT OF FACTS

10. Gong is a New York resident who has maintained JSI as a small business in Nassau County since 2019.

11. In 2008, Gong obtained a target and hunting pistol license from the Nassau County Police Department.

12. Under New York law, in order to operate a business as a gun dealer/gun smith, the owner of a store must hold a Gun Dealer/Gun Smith license.

13. In 2019 Gong obtained Gun Dealer/Gun Smith license from the Nassau County Police Department.

14. Additionally, in 2019 Gong obtained a business/target/hunting pistol license from the Nassau County Police Department.

15. As required under Federal law, Gong obtained a Federal Firearms License.

16. After obtaining these licenses, Gong began operating JSI at 164 Jericho Turnpike in Mineola.

17. Prior to October 2022, JSI sold firearms, firearm accessories, ammunition & magazines along with other self defense products.

18. On September 30, 2022, Gong was arrested by the NCPD and charged with trademark counterfeiting under New York Penal Law §165.72 and Conspiracy in the Fifth Degree under Penal Law §105.05(1).

19. The arrest related to the sale of optics and scopes.

20. As required under the Nassau County Pistol License Handbook, Gong promptly advised the NCPD PLS that he had been arrested.

21. Immediately upon being notified of the arrest, the NCPD suspended Gong's licenses, including the Gun Dealer/Gun Smith license.

22. Based on the suspension, Gong surrendered all of JSI's firearms to the NCPD.

23. On October 18, 2022, Gong was arraigned and released without bail.

24. Subsequently on February 8, 2023, the trademark counterfeiting charge was reduced to an A misdemeanor by the Nassau County District Court and the charges were adjourned to May 8, 2023 in contemplation of dismissal.

25. On February 24, 2023, Gong e-mailed Russell to advise as to the disposition of his criminal matter and to inquire as to the when his Gun Dealer/Gun Smith license would be reinstated and his firearms released.

26. Although Russell had previously emailed Russell in connection with the surrender of the firearms, Russell did not respond to Gong's February 24, 2023, e-mail.

27. On May 9, 2023, Gong's criminal charges were dismissed and sealed.

28. Thereafter on May 12, 2023, the law firm of Harfenist Kraut & Perlstein wrote to the NCPD PLS to advise as to the dismissal of the charges and to request the reinstatement of the licenses and the return of the firearms.

29. The May 12, 2023 letter was sent by first class mail and was also transmitted by e-mail to the general e-mail for the NCPD PLS and the e-mail accounts for Russell and Timpano.

30. Additionally, the May 12, 2023 letter was transmitted by e-mail to an attorney at the Nassau County Attorneys Office who regularly represents the NCPD PLS.

31. After no response was received to the letter, Gong visited the NCPD PLS on or about May 30, 2023 and was advised by Timpano that the NCPD PLS never received the letter.

32. On June 2, 2023, the letter was transmitted by e-mail a second time to an attorney at the Nassau County Attorney's Office who regularly represents the NCPD PLS.

33. The same date, the attorney at the Nassau County Attorney's Office forwarded the May 12, 2023 letter to the NCPD Legal Bureau.

34. Notwithstanding these efforts, the NCPD PLS has not sent any correspondence to Gong or his counsel in response to the request for reinstatement of the license or the return of the firearms.

35. It is unknown whether the NCPD PLS performed any investigation following the notification of the dismissal of the criminal charges.

36. The NCPD PLS has a well-established history of delaying the investigation of licensees who are under suspension.

37. The NCPD PLS has a well-established history of delaying the reinstatement of suspended licenses.

38. The NCPD PLS has a well-established history of failing to communicate with licensees.

39. As a result of the NCPD PLS' failure to reinstate Gong's license, he and JSI have been unable to sell or transfer handguns and semi automatic rifles.

40. As a result of the NCPD PLS' failure to reinstate Gong's license, he and JSI have been unable to provide pistol training to customers.

41. As a result of the NCPD PLS' failure to reinstate Gong's license, JSI has been unable to conduct all or most of its usual business.

42. As a result of the NCPD PLS' failure to reinstate Gong's license, Gong and JSI have been financially damaged and will continue to be damaged.

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR VIOLATION OF PLAINTIFFS'
## SECOND AMENDMENT RIGHTS

43. Plaintiffs repeat, reallege and reiterate the allegations in paragraphs one through one forty-two as if more fully set forth hereat.

44. On October 3, 2022, various officers of the Nassau County Police Department took possession of Gong & JSI's firearms.

45. On February 8, 2023, the criminal charges against Gong were adjourned in contemplation of dismissal.

46. On May 9, 2023, the criminal charges against Gong were dismissed by the Nassau County District Court.

47. Notwithstanding the dismissal of the criminal charges, Gong & JSI's firearms were not returned.

48. In February 2023, Gong personally advised Russell via e-mail of the pending dismissal of the criminal charges.

49. In May 2023, Russell, Timpano and the NCPD were advised that the criminal charges had been dismissed.

50. After the criminal charges were dismissed, the firearms were no longer evidence of a crime, assuming that any crime had even taken place.

51. Thereafter, by letter dated May 12, 2023, Gong through counsel advised Russell, Timpano and the NCPD PLS that the criminal charges had been dismissed and requested the return of the firearms and the reinstatement of the licenses.

52. Upon information and belief, the failure to return the firearms was made pursuant to a longstanding policy of the Nassau County Police Department to delay any and all investigations of license suspensions.

53. The policy was implemented and/or designed by Timpano, acting in his capacity as supervisor of the NCPD PLS.

54. The policy was implemented and/or designed by Russell, acting in his capacity as deputy commanding officer of the NCPD PLS.

55. The retention of firearms, notwithstanding the dismissal of all criminal charges constitutes a violation of Gong and JSI's Second Amendment rights.

56. As a proximate result of Defendants' intentional actions, Plaintiffs have been damaged in an amount to be provided at trial but no less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

## AS AND FOR A SECOND CAUSE OF ACTION
## VIOLATION OF PLAINTIFF'S
## FOURTEENTH AMENDMENT DUE PROCESS RIGHTS

57. Plaintiffs repeat, reallege and reiterate the allegations in paragraphs one through fifty-six as if more fully set forth hereat.

58. Gong had a protected property interest in his pistol licenses under the 14th Amendment to the United States Constitution.

59. JSI had a protected property interest in Gong's pistol licenses under the 14th Amendment to the United States Constitution.

60. The Defendants did not have unfettered discretion to suspend the pistol licenses.

61. The Defendants could not suspend the pistol licenses except upon a showing of good cause.

62. Gong had a strong interest in maintaining his pistol licenses under the 14th Amendment to the United States Constitution.

63. JSI had a strong interest in maintaining Gong's pistol licenses under the 14th Amendment to the United States Constitution.

64. The Defendants did not provide Gong with a pre-deprivation hearing.

65. The Defendants did not provide JSI with a pre-deprivation hearing.

66. The Defendants did not have exigent circumstances which justified the failure to provide a pre-deprivation hearing.

67. The Defendants' failure to provide a pre-deprivation hearing caused damage to Gong and JSI and constitutes a violation of their Fourteenth Amendment rights.

68. As a proximate result of Defendants' intentional actions, Plaintiffs were unable to perform all or most of JSI's normal business operations.

69. As a proximate result of Defendants' intentional actions, Plaintiffs have been damaged in an amount to be provided at trial but no less than FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), plus punitive damages and attorney's fees.

### AS AND FOR A THIRD CAUSE OF ACTION
### VIOLATION OF PLAINTIFF'S
### FOURTEENTH AMENDMENT DUE PROCESS RIGHTS

70. Plaintiffs repeat, reallege and reiterate the allegations in paragraphs one through sixty-nine as if more fully set forth hereat.

71. Gong had a protected property interest in his pistol licenses under the 14th Amendment to the United States Constitution.

72. JSI had a protected property interest in Gong's pistol licenses under the 14th Amendment to the United States Constitution.

73. The Defendants did not have unfettered discretion to suspend the pistol licenses.

74. The Defendants could not suspend the pistol licenses except upon a showing of good cause.

75. Gong had a private interest in operating his business.

76. JSI had a strong interest in operating as a business.

77. Because of the nature of this interest, a licensee erroneously deprived of a license cannot be made whole" simply by reinstating the license.

78. The interim period between erroneous deprivation and reinstatement can be financially devastating to the licensee.

79. The Defendants did not provide Gong with a post-deprivation hearing.

80. The Defendants did not provide JSI with a post-deprivation hearing.

81. The Defendants' failure to provide a post-deprivation hearing caused damage to Gong and JSI and constitutes a violation of their Fourteenth Amendment rights.

82. As a proximate result of Defendants' intentional actions, Plaintiffs were unable to perform all or most of JSI's normal business operations.

83. As a proximate result of Defendants' intentional actions, Plaintiffs have been damaged in an amount to be provided at trial but no less than FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), plus punitive damages and attorney's fees.

## AS AND FOR A FOURTH CAUSE OF ACTION
## UNCONSTITUTIONAL POLICY OF RETENTION OF SEIZED WEAPONS IN VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT RIGHTS

84. Plaintiffs repeat, reallege and reiterate the allegations in paragraphs one through eighty-three as if more fully set forth hereat.

85. Gong had a protected property interest in his pistol licenses under the 14th Amendment to the United States Constitution.

86. JSI had a protected property interest in Gong's pistol licenses under the 14th Amendment to the United States Constitution.

87. The Defendants did not have unfettered discretion to suspend the pistol licenses.

88. The Defendants could not suspend the pistol licenses except upon a showing of good cause.

89. In practice, the Defendants never provide suspended licensees with an opportunity for a formal hearing until after the completion of the Defendants' investigation.

90. In practice, the Defendants' investigation of suspended licensees often takes years before the investigation is completed.

91. The Defendants' practices are part of an unconstitutional de facto policy which deny licensees a hearing for an indeterminate period which can run

years, even if the circumstances which led to the suspension have been remedied or never existed at all.

92. The Defendants' practices are part of an unconstitutional de facto policy which deny gun dealers/gunsmiths of their livelihood for an indeterminate period which can run years, even if the circumstances which led to the suspension have been remedied or never existed at all.

93. As a result of the Defendants' unconstitutional policies and practices, Gong was deprived of the rights guaranteed to him under the Fourteenth Amendment.

94. As a proximate result of Defendants' unconstitutional policies and practices, Plaintiffs were unable to perform all or most of JSI's normal business operations.

95. As a proximate result of Defendants' unconstitutional policies and practices, Plaintiffs have been damaged in an amount to be provided at trial but no less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully demand the following relief:

a. For compensatory damages against all defendants in an amount to be proved at trial, but no less than THREE MILLION DOLLARS ($3,000,000.00).

    b.    For exemplary and punitive damages against all defendants in an amount to be proved at trial.

    c.    For attorneys fees pursuant to 42 U.S.C. §1988 against all defendants.

    d.    For such other and further relief as this Court may deem just and proper.

Dated: Lake Success, New York
       July 17, 2023

            Respectfully submitted,

            HARFENIST KRAUT & PERLSTEIN, LLP
            Attorneys for Plaintiffs
            3000 Marcus Avenue, Suite 2E1
            Lake Success, New York 11042
            (516) 355-9600

        By:   *Steven J. Harfenist*
                STEVEN J. HARFENIST
                NEIL TORCZYNER